UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE MELENDEZ,<br>    Petitioner,<br><br>        v.<br><br>SCOTT SEMPLE and C. CHAPDELAINE,<br>    Respondents. | PRISONER<br>No. 3:15-cv-335 (SRU) |

### RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, Jose Melendez, currently confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction for sale of illegal drugs on the ground that he was afforded ineffective assistance of counsel. For the reasons that follow, the petition is denied.

### I.    Procedural Background

Melendez was convicted after a jury trial of two counts of sale of narcotics by a person who is not drug-dependent and two counts of sale of narcotics within 1500 feet of a licensed child daycare center. He was sentenced to a term of imprisonment of thirty years. The Connecticut Supreme Court affirmed his conviction. *State v. Melendez*, 291 Conn. 693 (2009).

Melendez commenced a state habeas action challenging his conviction on the ground that trial counsel was ineffective. Following a trial, the state court denied the petition. *Melendez v. Warden*, No. CV094003123, 2012 WL 1219382 (Conn. Super. Ct. Feb. 29, 2012). The denial was affirmed on appeal. *Melendez v. Commissioner of Correction*, 151 Conn. App. 351 (2014), *cert. denied*, 314 Conn. 914 (2014).

In this action, Melendez asserts two grounds of ineffective assistance. First, he argues that trial counsel failed to relate information that would have led him to accept the first plea

offer, namely that the original eight millimeter footage showed an exchange of drugs and money that was not included on the edited footage shown to Melendez. Second, Melendez contends that counsel failed to adequately investigate the state's video evidence to learn that Melendez had been shown edited footage and did not provide him enhanced footage before trial.

## II.  Factual Background

The Connecticut Supreme Court concluded that the jury reasonably could have found the following facts. In the fall of 2004, the federal Drug Enforcement Agency ("DEA") in conjunction with the statewide narcotics task force conducted an investigation into alleged narcotics sales at the Fireside Restaurant in New Haven, Connecticut. Jose Franco, a confidential source, made controlled purchases as part of the investigation. Before making the purchases, Franco was outfitted with surveillance equipment designed to capture video and audio. The video and audio was transmitted wirelessly to a nearby vehicle where law enforcement officials recorded the transaction on eight millimeter videotape. *State v. Melendez*, 291 Conn. at 696–97.

On the evening of October 8, 2004, the supervising law enforcement officials gave Franco $100 and instructed him to enter the restaurant and attempt to purchase narcotics from anyone who was selling them. Franco encountered Melendez, whom he knew to be a drug dealer, in the restroom. Franco told Melendez that he wanted to purchase cocaine. Melendez gave Franco a small bag containing a white powdery substance in exchange for $20. Franco then left the restaurant and immediately met with the supervisory law enforcement officials. A DEA Special Agent took the bag and the remaining $80 from Franco. He field-tested the substance in the baggie, which tested positive for cocaine. On October 14, 2004, Franco again purchased a bag of white powder from Melendez for $20. The substance in the second bag also tested positive for cocaine. *Id.* at 67–68.

Melendez was arrested on December 17, 2004, and charged with various drug offenses. The charges were supported by Franco's identification of Melendez, the surveillance recordings and the field tests. *Id.* at 68.

### III. Standard of Review

The federal court will entertain a petition for a writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. *See White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) ("[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions.") (internal quotation marks and citations omitted). Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal habeas relief. *See Renico v. Lett*, 559 U.S. 766, 778 (2010) (holding

that court of appeals erred in relying on its own decision in a federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (absent a Supreme Court case establishing a particular right, federal court inference of right does not warrant federal habeas relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See also Burt v. Titlow*, 134 S. Ct. 10, 15 (2013) (federal habeas relief warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (objective unreasonableness is "a substantially higher threshold" than incorrectness).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately

supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398–99. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

**IV.     Discussion**

Melendez contends that trial counsel was ineffective because he failed to provide him information that would have led Melendez to accept a favorable plea offer and failed to adequately investigate video evidence the prosecution used at trial.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct fell below an objective standard of reasonableness established by prevailing professional norms and, second, that the deficient performance caused prejudice to him. *Id.* at 687–88. Counsel is presumed to be competent. The petitioner bears the burden of demonstrating unconstitutional representation. *See United States v. Cronic*, 466 U.S. 648, 658 (1984). To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"; the probability must "undermine confidence in the outcome" of the trial. *Strickland*, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005). To prevail, the petitioner must

demonstrate both deficient performance and sufficient prejudice. *See Strickland*, 466 U.S. at 700. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

The *Strickland* standard applies to challenges relating to plea offers. *Frey v. Missouri*, 132 S. Ct. 1399, 1405–06 (2012) (citing *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010)). When reviewing a claim of ineffective assistance of counsel during plea bargaining, the federal court must apply a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. at 13.

The Supreme Court has not identified a specific standard to determine whether counsel's performance was deficient but notes that codified standards of professional practice can be "important guidelines." *Id.* at 1408. The Court has noted the danger of distortion from hindsight, and identified special circumstances relevant to evaluating counsel's judgment, such as insights derived from past dealings with the same prosecutor or court. *Premo v. Moore*, 562 U.S. 115, 125 (2011).

Regarding the prejudice component of the standard, petitioners must "demonstrate a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel" and "a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." *Frey*, 132 S. Ct. at 1409. As part of the prejudice component, the criminal defendant must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.*

The court considers the last reasoned state court decision in evaluating a section 2254 petition. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the last reasoned decision was

issued by the Connecticut Appellate Court. In that decision, the state court applied the *Strickland* standard. As the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1). Accordingly, this Court must determine whether the state court decision is a reasonable application of *Strickland*. The question this Court must answer "is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Melendez's claims both relate to the video recordings of the drug sales to Franco. In analyzing the claims, the Connecticut Appellate Court considered the claims together and relied on the following facts.

In April or May 2005, defense counsel was permitted to view the eight millimeter videotape recording of the two transactions. In December 2005, the DEA Special Agent provided a copy of the video recording of the two transactions to the state and the state immediately provide a copy to defense counsel. *Melendez v. Commissioner of Correction*, 151 Conn. App. 353.

A pretrial hearing was held on December 21, 2005. The parties and judge discussed the status of the case and ongoing plea negotiations. Defense counsel informed the court that Melendez had not yet seen the recordings. Arrangements were made for Melendez to view the recordings that day. The prosecutor stated that he had not yet revealed the identity of the confidential source. The prosecutor explained to Melendez that his initial outstanding plea offer of five years to serve would be withdrawn immediately if the prosecutor was required to disclose the identity of the confidential source to Melendez. The prosecutor also explained that if Melendez wanted to enter a plea after learning the identity of the confidential source, the offer

would change to an "open" guilty plea, *i.e.*, Melendez would be subject to a sentence imposed at the discretion of the court, probably between eight and twenty-five years of incarceration. *Id.* at 553.

After viewing a VHS tape made from the eight millimeter video footage, Melendez rejected the initial plea offer and decided to proceed to trial. The prosecutor then disclosed Franco's identity to Melendez. After jury selection, the prosecution gave Melendez a DVD that had been created from the original eight millimeter footage of the two drug transactions. The DVD contained eight video segments. There were four segments for each transaction: (1) an exact duplicate of the surveillance footage without any modification, (2) the original surveillance footage slowed to 10% of normal speed, (3) enhanced footage at normal speed, and (4) enhanced footage slowed to 10% of normal speed. After receiving the DVD, Melendez moved for specific performance of the last plea offer before the disclosure of Franco's name. The state court denied the motion. The judge found that Melendez's attorney had been afforded the opportunity to view the same videotape used to make the DVD and that both the videotape and the DVD showed the same transactions. *Id.* at 553–54.

Melendez first claims that trial counsel failed to provide him information that would have led him to accept the original plea offer of five years, namely that the eight millimeter videotape contained more incriminating footage than was included on the VHS tape Melendez viewed in December 2005. Second, he contends that trial counsel should have investigated the footage on the VHS tape to ensure it was identical to the eight millimeter footage.

The appellate court agreed with the conclusion of the habeas court that trial counsel's investigation into the video evidence was reasonable and adequate and that counsel had provided Melendez adequate information and advice to enable Melendez to make an informed decision

regarding the initial five-year offer. The appellate court noted that the record evidence established that

> (1) counsel viewed the original eight millimeter videotape, which depicted evidence incriminating the petitioner, and advised the petitioner of its incriminating nature; (2) counsel spoke with the petitioner regarding the plea offer on numerous occasions, and explained to the petitioner the elements of the crimes he was charged with and the strength of the state's case in relation to the available and potentially available evidence, including the effect of potential testimony by Franco and the videotape's ability to corroborate that testimony; and (3) counsel specifically advised the petitioner to accept the plea offer.

*Id.* at 556 n.4. The appellate court also agreed with the habeas court's conclusions that, despite Melendez's argument that the court's sole focus should be on the video evidence, the recordings were not the only evidence against him. At the habeas hearing, counsel testified that his focus during pretrial discussions was on the confidential informant and the likelihood that he would testify as well as what he would say. Counsel had emphasized that, if Franco testified, the video evidence would be used to corroborate his testimony. Counsel further testified that, in his experience, if Franco had refused to testify or if the state did not wish to disclose his identity, the charges would be dismissed or nolled. The habeas court viewed the eight millimeter, VHS and DVD recordings and determined that all of the recordings showed incriminating transactions. The habeas court found that Melendez's testimony that he rejected the plea because he did not believe that the recording incriminated him was not credible. The habeas court found that Melendez rejected the plea because he believed that Franco would be afraid to be identified and to testify and, therefore, would not appear at trial. *Id.* n.5; *see also Melendez v. Warden*, 2012 WL 1219382 at *1–4.

The federal court presumes that the factual determinations of the state court are correct and can overturn them only if they are not adequately supported by the record. Factual determinations include the habeas court's assessment of the various recordings and its credibility findings regarding Melendez and trial counsel. *See Smith v. Mann*, 173 F.3d at 76. The credibility determinations are supported by the testimony of Melendez and trial counsel at the habeas hearing. For example, the habeas court credited counsel's testimony that he was unable to enhance the footage shown to Melendez in December 2004 and, even if he could, he would not have done so because the enhanced footage would have bolstered the prosecution's case. *Melendez*, 2012 WL 1219382, at *2. In addition, the habeas court credited counsel's statements that he explained to Melendez that the recordings contained incriminating evidence and encouraged him to accept the first plea offer, and that the focus of their discussions was always whether Franco would be identified and testify. *Id.* at *2–3. The habeas court did not credit Melendez's testimony that he only rejected the plea because of the recording he viewed. *Id.* at *4. Melendez has not met his burden of rebutting the presumption of correctness.

Based on the state court's factual findings, the determination that trial counsel was effective is not an unreasonable application of Supreme Court law. Accordingly, the petition for writ of habeas corpus is denied.

## V. Conclusion

The petition for writ of habeas corpus [Doc. #1] is denied. Because Melendez has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of the respondents and close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 12th day of November 2015.

                    <u>/s/ STEFAN R. UNDERHILL</u>
                    Stefan R. Underhill
                    United States District Judge